IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABTH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI & THOMPSON LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone:  650.618.4360
Facsimile:  650.618.4368

Attorneys for Plaintiff
CADENCE DESIGN SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BERKELEY DESIGN AUTOMATION, INC., a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 13-cv-01539 YGR<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cadence Design Systems, Inc. ("Cadence") alleges claims for violation of the Digital Millennium Copyright Act and breach of contract against Defendant Berkeley Design Automation, Inc. ("BDA") and Does 1 through 25, inclusive, as follows:

**PARTIES**

1. Cadence is a Delaware corporation with its principal place of business at 2655 Seely Avenue, San Jose, California 95134.

2. Cadence is informed and believes and on that basis alleges that BDA is also a Delaware corporation with its principal place of business at 2500 Augustine Drive, Suite 201, Santa Clara, California 95054.

3. Defendants Doe 1 through Doe 25, inclusive ("The Does") are sued herein under fictitious names. Their true names and capacities are unknown to Cadence. Cadence will amend this complaint to set forth their true names and capacities when ascertained.

4. Cadence is informed and believes and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in Count 1, and that Cadence's damages as alleged in Count 1 were proximately caused by those Defendants.

5. Cadence is informed and believes and thereon alleges that at all times mentioned herein, each of the Defendants, fictitious or otherwise, was the agent, employee, alter ego, successor, principal, subcontractor, co-venturer and servant of each of the remaining Defendants, and was, in doing the things herein complained of, acting within the scope of such relationship.

**JURISDICTION AND VENUE**

6. This is an action for violation of the Digital Millennium Copyright Act ("DMCA") arising under the copyright laws of the United States, 17 U.S.C. § 1201 et seq. (Count 1), and for breach of contract arising under the laws of the State of California (Count 2). This Court has subject matter jurisdiction over Count 1 under 28 U.S.C. §§ 1331 and 1338 and over Count 2 under 28 U.S.C. §§ 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because defendants have violated the DMCA in this district, and/or are deemed to reside in this district.

**INTRADISTRICT ASSIGNMENT**

8. Pursuant to Local Rule 3-2(c), this case is subject to district-wide assignment because it is an Intellectual Property Action.

**GENERAL ALLEGATIONS**

**The Parties and Their Products**

9. Cadence is a leading developer and supplier of software, hardware, intellectual property cores and services which customers use to design and verify advanced semiconductors, consumer electronics, networking and telecommunications equipment, and computer systems. Cadence's customers include industry leaders in market segments such as mobile devices, communications, cloud and data center infrastructure, personal computers and other devices that

1   connect to the Internet.  Cadence's design platforms include *Incisive* functional verification,
2   *Virtuoso* custom integrated circuit ("IC") design, *Encounter* digital IC design, and *Allegro*
3   system interconnect design.

4   10.   Cadence is informed and believes and thereon alleges that BDA is the developer
5   and supplier of the *Analog SPICE* nanometer circuit verification platform ("*AFS Simulator*") for
6   analog, mixed-signal and RF (AMS/RF) design verification.

7   11.   Cadence is informed and believes and thereon alleges that because many of BDA's
8   customers use Cadence offerings as their primary design and verification tools, BDA wanted to
9   interface its AFS Simulator to Cadence's Virtuoso Analog Design Environment ("*Virtuoso*
10  *ADE*") so that BDA's customers could launch the AFS Simulator from Virtuoso ADE,
11  automatically extract design information from the Virtuoso ADE database, and view results using
12  the Cadence waveform display tools in Virtuoso ADE.

13  12.   Virtuoso ADE is designed to permit the integration of non-Cadence simulators like
14  BDA's AFS Simulator only if the developer of the third party simulator ("Simulator Developer")
15  has entered into an agreement with Cadence to integrate, and has in fact integrated, the third party
16  simulator with Virtuoso ADE through use of the Cadence OASIS integration product (the
17  "OASIS Integration"), which requires the end-user of the non-Cadence simulator to have a
18  Cadence OASIS run-time license (an "OASIS License") for each third party simulator used.

19  13.   Virtuoso ADE contains software commands not visible or disclosed to an end user
20  or a Simulator Developer that will only cause Virtuoso ADE to launch a simulator if (a) an
21  OASIS License for the simulator is found or (b) the simulator has software code found in
22  Cadence simulators, the existence and content of which is not disclosed to a Simulator Developer
23  and is proprietary and confidential to Cadence, that Virtuoso ADE can access ("Access Code) to
24  cause it to launch the simulator even though an Oasis license is not found (the "Cadence
25  Technological Measure").

26  14.   The existence of the Cadence Technological Measure is proprietary and
27  confidential information of Cadence.  Cadence is informed and believes and thereon alleges that
28  as a result of their prior employment at Cadence The Does knew (a) of the existence of the

-3-

1   Cadence Technological Measure, (b) how to circumvent the Cadence Technological Measure, and

2   (c) that the Cadence Technological Measure was proprietary and confidential information of

3   Cadence.

4   **The Contracts**

5       15.    Effective December 1, 2009, Cadence and BDA entered into Connections

6   Agreement No CA-09BDA1201 (the "CNA") in which BDA was identified as "Member."

7       16.    The second recital to the CNA states:

> WHEREAS member desires to develop and commercially offer interfaces which facilitate a tighter level of integration between Specific Member Products [defined as "electronic design automation products"] and specific Cadence Products and Member acknowledges that developing such interfaces requires access to Cadence's Software, Documentation and Confidential Data about the operational characteristics of Cadence's Products.

    17.    Section 4.1 of the CNA provides in part:

> Member shall provide written notice to Cadence of Member's intention to develop any interface to or translator for a Cadence product which is not specifically identified in Exhibit 1.  Cadence and Member shall then discuss whether the licenses granted under this licenses granted under this CNA and the PLMA shall be amended to permit Member to develop any such additional interface(s) or translator(s).  Absent and prior to written notification and amendment to this CNA and the PLMA, Member is not licensed to develop any interface to or translator for a Cadence product other than those specifically identified in Exhibit 1.

    18.    Section 4.6 of the CNA provides:

> Use of Cadence's Products:  Member shall not use any Cadence Products or portions thereof provided to Member hereunder in any manner or for any purpose except as expressly permitted in the PLMA.

    19.    Section 4.1 of Exhibit 2 to the CNA, the Product License and Maintenance Agreement ("PLMA"), provides in part:

> Subject to the terms of this PLMA and the CNA, Cadence grants Member a temporary, non-transferable, non-exclusive, limited license, without right to sublicense, to use the Software for the sole purpose of (i) creating, developing, demonstrating, testing and supporting the specific Connections Interface(s) agreed to between Cadence and Member described in paragraph 4.1 of the CNA and in Exhibit 1 to the CAN, and (ii) training customers to use the Connections Interface(s)…. Member shall not use the Cadence Products for any other purpose or let any third party do so.

    20.    Section 4.2 of the PLMA provides in part:

> In order to protect Cadence's and its grantors' rights, Member shall not modify, translate, disassemble, de-compile or Reverse Engineer any Cadence Products or create a derivative work thereof or Use any Cadence Product to develop the same or similar item or let any third party do so…. or (iv) distribute externally to any third party any communication that compares the features, functions or performance characteristics of any Cadence Product or Connections Interface(s) with any other similar product of Member or a third party without Cadence's express prior written approval.

21. Section 7.0 of the PLMA provides in part:

> Member agrees that the unauthorized use of Cadence Products will cause irreparable harm for which no adequate remedy at law exists and that, in addition to any other remedies available, Cadence shall be entitled to temporary, preliminary and permanent injunctive relief to enforce the terms of this PLMA.

**BDA's and The Does' Unlawful Acts**

22. In late 2012, Cadence became aware that BDA, using The Does, had created and was distributing a version of the AFS Simulator that could be launched from Virtuoso ADE even if it did not find an OASIS License.

23. Cadence is informed and believes and thereon alleges that the version of the AFS Simulator which could be launched from Virtuoso ADE even if it did not find an OASIS License did so by using Access Code ("the BDA Circumvention").

24. As a result of BDA's distribution of the BDA Circumvention as part of the AFS Simulator, end-users of the AFS Simulator could launch the AFS Simulator from Virtuoso ADE without obtaining an OASIS License or even knowing that an Oasis License was required. BDA called the version of the AFS Simulator that implemented the BDA Circumvention the "Unified Integration."

25. Cadence is informed and believes and thereon alleges that users of the Unified Integration were not informed by BDA that the Unified Integration included the BDA Circumvention, and the BDA Circumvention and its operation were not visible to users of the Unified Integration.

26. In mid-2012, a Cadence engineer was assisting an engineer at a large semiconductor manufacturer (the "Common Customer") troubleshoot problems with the integration of Virtuoso ADE and the AFS Simulator. To assist in the troubleshooting, the

1  Common Customer engineer gave the Cadence engineer a copy of the BDA "Analog FastSpice
2  Platform Installation Guide Version Q4 2010 Updated November 26, 2010" (the "Q4 2010 BDA
3  Installation Guide").

4  27.  On page 15 of the Q4 2010 BDA Installation Guide, BDA advises users who want
5  to integrate the AFS Simulator with Virtuoso ADE to use the Unified Integration rather than to
6  obtain an OASIS License.

7  28.  In fact, the Q4 2010 BDA Installation Guide at page 15 states:  "**The OASIS**
8  **Integration is deprecated.  BDA strongly discourages users from choosing this Method**."

9  29.  Cadence had never seen a copy of the Q4 2010 BDA Installation Guide prior to the
10 Common Customer engineer giving the Cadence engineer a copy.  In fact, in an attempt to
11 conceal its unlawful acts and the statements in the Q4 2010 BDA Installation Guide from
12 Cadence, BDA had provided a copy of the BDA Installation Guide that only describes integration
13 of the AFS Simulator with Virtuoso ADE through use of the OASIS Integration that requires the
14 end-user to have an OASIS License.  The statements alleged in paragraphs 27 and 28, above,
15 were hidden from Cadence.

16 30.  Cadence is informed and believes and thereon alleges that as a result of BDA's
17 encouragement of users of the AFS Simulator who wanted to integrate with Virtuoso ADE to do
18 so using the Unified Integration, that is, without obtaining an OASIS License, the vast majority of
19 users of the AFS Simulator who integrated with Virtuoso ADE did so without obtaining an
20 OASIS License.

21                          **COUNT 1**
22          **(AGAINST BDA AND THE DOES FOR VIOLATION OF THE DMCA)**

23 31.  Cadence realleges paragraphs 1 through 30, inclusive.

24 32.  Cadence is the owner of the copyright in Cadence Virtuoso ADE.

25 33.  Neither BDA nor The Does had authority from Cadence to circumvent the
26 Cadence Technological Measure by the BDA Circumvention or otherwise, and instead BDA was
27 contractually prohibited from doing so as herein alleged.

28 34.  The Cadence Technological Measure is an "Effective Technological Measure"

1  within the meaning of the DMCA, 17 U.S.C. § 1201(a)(3)(B), because the Cadence
2  Technological Measure in the ordinary course of its operation requires the application of
3  information, or a process or a treatment, with the authority of the copyright owner, to gain access
4  to Virtuoso ADE to cause it to launch a non-Cadence simulator from Virtuoso ADE without an
5  OASIS license.

6        35.    Cadence is informed and believes and thereon alleges that the BDA Circumvention
7  circumvents the Cadence Technological Measure within the meaning of the DMCA, 17 U.S.C. §
8  1201(a)(3)(A), by descrambling, decrypting, or otherwise avoiding, bypassing, removing,
9  deactivating, or impairing the Cadence Technological Measure.

10       36.    The foregoing acts of BDA and The Does in creating the BDA Circumvention
11 violated the DMCA, 17 U.S.C. § 1201(a)(1)(A).

12       37.    The foregoing acts of BDA in distributing the BDA Circumvention as part of the
13 AFS Simulator violated the DMCA, 17 U.S.C. § 1201(b)(1)(A).

14       38.    Pursuant to the DMCA, 17 U.S.C. § 1203(b)(3) and 1203(c)(2), Cadence is
15 entitled to its actual damages, including but not limited to the loss of OASIS License fees,
16 Cadence's lost profits and any profits of BDA and The Does attributable to their violation of the
17 DMCA, all in an amount to be proven at trial.

18       39.    Pursuant to the DMCA, 17 U.S.C. § 1203(b)(1), Cadence seeks a temporary and
19 permanent injunction to prevent or restrain BDA and The Does' violation of the DMCA.  In
20 Section 7.0 of the PLMA, BDA "agrees that the unauthorized use of Cadence Products will cause
21 irreparable harm for which no adequate remedy at law exists and that, in addition to any other
22 remedies available, Cadence shall be entitled to temporary, preliminary and permanent injunctive
23 relief to enforce the terms of this PLMA."

24       40.    Pursuant to the DMCA, 17 U.S.C. § 1203(b)(2), Cadence seeks the impounding of
25 "any device or product that is in the custody or control of BDA and The Does and that the court
26 has reasonable cause to believe was involved in a violation," including but not limited to the BDA
27 Circumvention and the BDA AFS Simulator.

28       41.    Pursuant to the DMCA, 17 U.S.C. § 1203(b)(4), Cadence seeks recovery of its

costs from BDA and The Does.

42. Pursuant to the DMCA, 17 U.S.C. § 1203(b)(5), Cadence seeks recovery of its reasonable attorneys' fees from BDA and The Does.

WHEREFORE, Cadence seeks judgment as more fully set forth below.

## COUNT 2

### (BREACH OF CONTRACT ONLY AGAINST BDA)

43. Cadence realleges paragraphs 1 through 30, inclusive.

44. Cadence has performed all of its obligations to BDA under the CNA and the PLMA except those that Cadence was prevented or excused from performing.

45. BDA breached at least paragraphs 4.1 and 4.6 of the CNA and paragraph 4.1 and 4.2 of the PLMA by at least the acts alleged in paragraphs 21-28, inclusive.

46. Cadence has suffered damages in an amount to be proven at trial proximately caused by BDA's breaches of the CNA and the PLMA.

WHEREFORE, Cadence seeks judgment as more fully set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Cadence prays for entry of judgment as follows:

On Count 1 from BDA and The Does:

1. Cadence's actual damages including but not limited to the loss of OASIS License fees, Cadence's lost profits and any profits of BDA and The Does attributable to their violation of the DMCA, all in an amount to be proven at trial;

2. A temporary and permanent injunction to prevent or restrain BDA and The Does' violation of the DMCA;

3. The impounding …of "any device or product that is in the custody or control of BDA and The Does and that the court has reasonable cause to believe was involved in a violation," including but not limited to the BDA Circumvention and the AFS Simulator; and

4. Cadence's reasonable attorneys' fees in this Action.

On Count 2 only from BDA:

1. For damages according to proof.

1  On all Counts against BDA and The Does:

2      1.    For costs of suit herein incurred; and

3      2.    Such other and further relief as the Court deems just and proper.

4  Dated:  May 14, 2013

By: _____/s/_____
IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABEH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI Belloli (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI & THOMPSON LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone:  650.618.4360
Facsimile:   650.618.4368

Attorneys for Plaintiff
CADENCE DESIGN SYSTEMS, INC.

## DEMAND FOR JURY TRIAL

Plaintiff, by its undersigned attorneys, demands a trial by jury on all issues so triable.

Dated:  May 14, 2013

By: _____/s/_____
IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABEH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI & THOMPSON LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone:  650.618.4360
Facsimile:   650.618.4368

Attorneys for Plaintiff
CADENCE DESIGN SYSTEMS, INC.